WETTER, guardian, *et al. vs.* HABERSHAM *et al.*, executors.

[JACKSON, Judge, being related to some of the plaintiffs in error, Judge HILLYER, of the Atlanta circuit, was designated by the governor to preside in his place.]

| 60 | 193 |
|----|-----|
| 96 | 18 |
| 60 | 193 |
| 101 | 288 |
| 60 | 193 |
| f112 | 566 |
| 60 | 193 |
| f123 | 675 |
| 60 | 193 |
| 125 | 130 |
| 60 | 193 |
| 127 | 756 |

1. In a will case, where the alleged testatrix left no child or lineal descendants of children, the principle contained in the last clause of section 2399 of the Code, should not be given in charge to the jury, as the same does not apply if the heirs at law are remote or collateral kindred, and the court below was right in so ruling on the motion for new trial.

2. Where the verdict turns on alleged monomania, and the presiding judge grants a new trial on the ground that there was no evidence of monomania in the testatrix, and this court is of the same opinion as to such want of evidence, the judgment will be affirmed.

3. If a person die intestate, leaving no descendants or next of kin within these degrees expressly named and their order of preference, either personally or by representation, set down in the Code, the heirs at law are those nearest in blood to such intestate, to be ascertained according to the rules, not of the civil but of the canon law—that is, counting from the intestate up to the common ancestor, one degree for each generation, thence down the collateral line to the contestant. The number of degrees in the longer of these two lines is the degree of kindred between the intestate and the contestant. By these rules, the grandchildren of an aunt are in the third degree, and are heirs at law in preference to the great-grandchildren of a brother, who are in the fourth degree.

4. In a will case, all persons may be parties who are heirs at law, or who, *bona fide*, claim to be such, and where the presiding judge is of the opinion that the caveators all have an interest, he should refuse to dismiss any of them, and this court will not control his discretion in so doing.

5. Where, in a will case, evidence was offered tending to prove that in the lifetime of the testatrix a bill had been filed to close an old family burial place, by which it was sought to show an unnatural state of feeling on the part of the testatrix towards a portion of

her kindred, and it did not affirmatively appear that the testatrix filed the bill, or was in any way responsible for its averments : *Held*, that on objection by the opposite party, such evidence should have been excluded.

6. Evidence that the mother, then in life, of certain of the alleged heirs at law, informed her husband that she had written a letter, though friendly in its terms, to the testatrix, and sent to such husband what purported to be a copy of such letter, is irrelevant.

7. In a will case the propounders hold the affirmative, and the burden of proof is on them; but this burden is to show the *factum* of the will, and general sanity or testamentary capacity only. A charge to the jury, which submits the question whether the testatrix was entirely free from insanity *of any kind*, states the rule too strongly.

8. The heir at law may complain of any monomania which really exists, and which injures him; that is, which produces the will and thus diverts the inheritance from him, whether the monomania be directed against him or another; but where there is really no monomania, or where, though monomania exists, the will is not the product of it; then the heir is not injured, and if it appears that the testament does speak the wishes of the testatrix, unbiased by monomania, it ought to stand.

9. If there be nothing illegal in the terms of a will, and the fact of its execution as well as testamentary capacity in the deceased be proven to the satisfaction of the jury, they should find for the will, and the court should order it to record, leaving all questions of construction, and the fate of charitable or other particular bequests for action of the parties or future direction in the proper court, as the case may require. *Reynolds vs. Bristow et al.*, 37 *Ga.*, 283, construing section 2419 of the Code, reviewed and affirmed.

10. Where the executors are propounding an alleged will for proof in solemn form, the issue, and the only issue, is *devisavit vel non.* The jury should, by their verdict, find that the paper propounded "is," or "is not," the last will and testament of the deceased. A special verdict in such case is unauthorized, As between the caveators themselves, the verdict can settle nothing, and should find nothing in favor of one or against another.

Wills. Descent. Estates. Parties. Evidence. Practice in the Superior Court. Charge of Court. Before Judge TOMPKINS. Chatham Superior Court. May Term, 1877.

The executors of Mary Telfair, deceased, propounded a will, which was caveated by two sets of heirs at law claim-

ing separately—the " Wetters " and the "Joneses." The case was carried from the court of ordinary to the superior court by appeal. At the close of the evidence, counsel for the propounders moved to dismiss the caveat and appeal of the Wetters on the ground that the evidence of caveators showed that the Joneses were nearer of kin to deceased, and the Wetters therefore could not be heirs at law. This was overruled. The court submitted questions to the jury, which they answered specially, and then found in general terms for the caveat of the Wetters and against that of the Joneses. The propounders moved for a new trial on the following, among other grounds :

1st. Because the court erred in admitting as evidence to the jury, an indorsement upon a letter from Mrs. Alberta Wetter to her husband A. P. Wetter, purporting to be an extract from a letter written by said Mrs. Wetter to her aunts, Miss Mary Telfair and Mrs. Hodgson, there being no evidence that the letter from which said extract purported to have been taken, was ever sent to, or received by the said Miss Mary Telfair and Mrs. Hodgson, and said extract being irrelevant to the issues on trial.

2d. Because the court allowed A. P. Wetter to testify to the contents of a bill in equity, alleged to have been filed for the purpose of procuring a certain family vault at Sharon to be closed up, which bill in equity nowhere appears upon the docket or record of the court for which it was intended, and the alleged title of the same does not connect the testatrix, Mary Telfair, therewith, no foundation having been laid for the introduction of said secondary evidence ; and the testimony being irrelevant to the issue.

3d. Because the court erred in refusing the motion of counsel of propounders, made at the close of the evidence in the case, to dismiss the caveat and the appeal of the caveator Augustus P. Wetter as guardian *ad litem* of J. A. T. Wetter, Mary Martha Wetter and Louisa Alberta Wetter, minors. The said motion being based on the fact that the evidence introduced by the two sets of caveators

themselves, showed that G. Noble Jones and Mrs. Mary Harrison and Alfred Cuthbert, caveators, were the children of the first cousin of the testatrix, of the maternal blood, and the said J. A. T. Wetter, Mary Martha Wetter and Louisa Alberta Wetter, were the great-grandchildren of the brother of the said testatrix of the paternal blood, and thus the said children of the first cousins of the said testatrix were nearer by blood or in degree of consanguinity to said testatrix than the said great-grandchildren of her brother, and consequently the said great-grandchildren of her said brother were not her heirs at law.

4th. Because the court erred in charging the jury that it was incumbent upon the propounders to prove not only that the testatrix was of sound and disposing mind and memory at the time of the execution of her will, but also that she did not have any monomania, insane delusion, or partial insanity of any kind.

5th. Because the court erred in submitting to the jury section 2399 of the Code, inasmuch as the greater portion of said section was not applicable to the case at bar, and reading it to the jury was calculated to impress their minds with the idea that it was applicable, and that the will on trial came under its provisions, and to mislead them in their verdict.

6th. Because the court erred in charging the jury as follows: " A person may generally appear sensible in the ordinary intercourse and business transactions of life, and yet be the victim of monomania and insane delusion as to particular persons or particular matters; in fact, may be insane upon one subject and sane as to all others. If you should find from the evidence that the will now offered for probate was the result of such monomania or insane delusion, it will be your duty to set it aside, even though the proof should have failed to satisfy you that there was a total deprivation of reason in the testatrix, or that her mind was generally weak and unsound."

7th. Because the court erred in refusing to charge as follows: "If the jury find that the caveators, the children of

Augustus P. Wetter and his wife (formerly Alberta Cobb) were the great-grand-nieces of the testatrix at the time of her death, and that George Noble Jones, and those claiming with him, were the children of the first cousin of the testatrix at the time of her death, then the latter set were the heirs at law of said testatrix at the time of her death, and not the children of Wetter."

8th. Because the verdict was contrary to law, evidence and the charge of the court.

The court granted a new trial, and caveators excepted.

T. M. NORWOOD; R. E. LESTER; N. C. COLLIER; RICHARD H. CLARK; O. A. LOCHRANE; ROBERT TOOMBS, for A. P. Wetter, guardian.

W. W. MONTGOMERY; J. R. SAUSSY, for George Noble Jones *et al.*

JACKSON, LAWTON & BASINGER; HARTRIDGE & CHISHOLM; WM. GRAYSON MANN, for the executors.

HILLYER, Judge.

1. The testatrix, Mary Telfair, died without children. There was much controversy as to who were her heirs at law, but all the contestants were remote collateral kindred. The estate disposed of under the will was a very large one, and the bulk of it is bequeathed to strangers; indeed, it may be said that all of it is so bequeathed, if the word "strangers" be taken to mean any persons not bearing the relationship of husband and wife, or children. The judge presiding at the trial in the court below gave in charge to the jury, section 2399 of the Code, in which it is provided, amongst other things, that where an entire estate is bequeathed to strangers, "to the exclusion of the wife and children," the will should be closely scrutinized, and upon the slightest evidence of aberation of intellect, or collusion, or fraud, or any undue influence or unfair dealing, probate should be refused. On

the motion for new trial the judge held that this charge. was error, and we think the latter ruling the correct one. The provision of law contained in section 2399 of the Code is based on the principle, the very rational and common sense principle, that a man is apt to love his wife and children, and that, in a well regulated mind, they are the natural, and, as human experience shows, almost the invariable objects of his bounty; and the law deems that to bequeath his property to strangers, to the exclusion of wife and children, is so unnatural an act as to require very little more evidence to establish the proposition that the testator's mind is not sound and disposing, and of testamentary capacity. But where there are no kindred having the relationship named in the act, the principle does not apply.

2. One of the grounds for a new trial was, that there was no evidence of monomania, and the presiding judge granted a new trial on this ground amongst others. As the case is to be tried again, we do not indulge in any extended commentary on the evidence. We will only say that looking carefully through the evidence in the record, we all agree thoroughly with Judge Tompkins, that there is nothing in it which amounts to proof of monomania, and we have no hesitation in affirming the judgment granting the new trial on that ground.

3. It appears in the record that there are two classes of persons, and caveators, claiming to be heirs at law, each to the exclusion of the other. These may be designated as follows: first, the "Joneses," who are grandchildren of an aunt of the testatrix; second, the "Wetters," who are great-grandchildren of a brother of the testatrix. It was a question much mooted at the trial, and the subject of the most elaborate argument and research in this court, as to which of these two classes are, under our law, the next of kin of Miss Telfair. Section 2484 of the Code furnishes the rules for determining who are the heirs at law of any deceased person, and we hold that its terms as statute law are sufficiently broad and expressive as to cover the whole ground, expressly

naming certain particular cases and adopting the rules of the canon law, to govern in all other cases not expressly mentioned. This section in its various clauses, numbered *seriatim*, from (1) to (8), after providing for the case of husband and children, the wife and representatives of children, posthumous children, brothers and sisters, and descendants of each, the whole blood and half blood, and extending as far as the children or grandchildren of brothers or sisters, the father, mother, first cousins, uncles and aunts, and, in express words, declaring the degree and relative rank of each as to inheritance, ends in the sweeping provision embodied in the 9th clause, "that the more remote degrees of kindred shall be determined by the rules of the canon law, as adopted and enforced in the English courts prior to the 4th day of July, 1776."

It is obvious that as to all these degrees of kindred and relationship expressly mentioned and set down in the section of the Code under consideration, they are to occupy the position or degree of kindred to which the words of the act assign them. And if the contestants in this case were in any degree of kindred to Miss Telfair not more remote than grandchildren of brothers, their relative rank as to inheritance would be easily determined as named by x press words in the section, and they would take rank where the section places them ; but it is conceded on all hands that neither class of the contestants—neither the Wetters nor the Joneses are within any of these degrees. They come under the class mentioned in the ninth clause of the act, "the more remote degrees," and accordingly the question as to "who are the heirs at law of Mary Telfair" must be determined by the rules of the canon law, as adopted and enforced in the English courts prior to the fourth of July 1776. To ascertain the rules of the canon law we have but to refer to the adjudicated cases and authorities in England coming down to us from beyond the date in question, and from these it is impossible to err in the proposition that to ascertain the degree of kindred we must count

from the intestate up to the common ancestor one degree for each generation, thence down the collateral line to the contestant : the number of degrees in the longer of these two lines is the degree of kindred between the intestate and the contestant. And by this rule the grandchildren of an aunt are in the third degree, and are heirs at law in preference to the great-grandchildren of a brother, who are in the fourth degree. This construction involves the proposition, that if Alberta Wetter, the grandchild of Thos. Telfair, the brother, had been in life at the time her great-aunt Mary Telfair died, she would have inherited the whole estate to the exclusion of the Joneses. Because by representation she would have been moved up to the position of her grandfather, Thos. Telfair, and then standing in the shoes of a brother she would of course have inherited to the exclusion of the descendants of an aunt (the Joneses) ; but that Mrs. Wetter having died before Mary Telfair, her line is cut off altogether ; and though she left children they are postponed to those same grandchildren of an aunt, whom their mother would have completely outranked. For myself if not controlled by authority and precedent, I should have some hesitancy in so ruling. The doubt is as to whether the language, " There shall be no representation beyond the children and grandchildren of brothers and sisters," means that none but living persons shall be counted under, or take rank by, representation, or whether representation ought not to be admitted as far as Alberta Wetter (a brother's grandchild) although she be dead, but not " beyond " her, and thus in counting the degrees to move her up to the place of her grandfather, Thomas Telfair, and to count her and her mother and her grandfather, by " representation," as all one degree. If Alberta Wetter had been in life, the fact that her mother and grandfather were dead, would not prevent the degree of kindred from counting in her favor or prevent her from being moved up to and standing in the shoes of her dead grandfather ; and why should her death prevent her children from standing in her shoes ? Quite an ingeni-

ous argument might be made in favor of that view, and the subject made to furnish another of the curious and difficult problems incident to the whole doctrine of kinship and inheritance, than which perhaps no one branch of the law has been more fruitful of controversy, or had expended upon it more learning and research. But the safe course is to resort to authority, follow the beaten path of precedent. The doctrine of representation is not now in the laws of England.

From quite an ancient date representation was admitted in England as far as the children of brothers and sisters. And such was the law of Georgia down to the act of 1859. By that act representation was extended to grandchildren of brothers and sisters. But the ancient inhibition which came across the water with our forefathers was retained, namely, " that further than this there should be no representation among collaterals." Now take the law as it stood in England prior to our adopting statute, where the rules of the canon law were of force, and in human experience such a contest as the present one would be apt to arise with some frequency, and accordingly we find quite a number of cases in which this and the like question did arise, and were decided in the English courts, and it was very early held, and the doctrine firmly established, that the language of the act : " There shall be no representatives admitted after brothers' and sisters' children," operated to cut off all who were in any more remote degree altogether from any benefit of the doctrine of representation ; that is, that if the person entitled to representation within the words of the act, be dead, that all representation is at an end, and one who stands in the shoes of such a deceased person can thereby take no benefit of representation. We quote from the case of Pett *vs.* Pett, 1 Comyn's Reports, 87 : " A libel was exhibited against the administrator, setting forth that the intestate had two brothers who had issue and died. The issue of one of the brothers had issue, a son and a daughter, and then the intestate dies ; and his grand-nephew and grand-neice, the son and daughter

of the issue of one of the brothers, wanted to have distribution with his neice, the issue of the other brother ; but the spiritual court had denied it, for that there is a proviso in the act of parliament that there shall be no representatives admitted after brothers' and sisters' children, which occasioned the motion for a *mandamus,* but it was denied." Can anything be plainer ? This was decided in the twelfth year of William III, and in support of the doctrine there laid down, may be cited 1 Ld. Raymond, 571 ; Holt, 259 ; 1 Salk., 250, S. C. ; 3 Salk., 138, ; 2 Eq. Cases Abr., 435 ; 12 Mod., 409 ; 1 P. Wms., 25, 594 ; Gib. Cod., 481 ; 4 Burns' Eccl. Law., 358 ; 2 Vern., 233 ; Prec. Chan., 28 ; 2 Show., 286 ; Lovelass on Wills, 77 ; Raym., 496.

Concluding, then, as we do, that the doctrine of representation is not applicable to the case, and that by the rules of the canon law, the Joneses are in the third degree and the Wetters in the fourth, we hold that the former are heirs at law to the exclusion of the latter.

4. When a will is propounded for probate whether the proceedings be initiated by the executors or by the heirs at law, the object of the investigation is to determine the question of testacy or intestacy, and it can never be said that the litigation is ended, unless all persons have been heard or have had an opportunity to be heard, who either really have an interest or *bona fide* claim to have an interest. We will not say that, after the court has heard all the facts, if the presiding judge is clearly satisfied in his own mind beyond all doubt, that any caveator is really a stranger to the controversy, and has no interest whatever in the result of the litigation, the court may not dismiss him from the case. But as long as it appears, either that the caveator has an interest or the presiding judge has even a doubt upon the subject, he should retain him in the case to the end that the judgment may bind him.

5. Some question was made at the hearing relative to the competency of one of the witnesses, and other matters relating to the *factum* of the will or formalities of its execution.

In none of the rulings thus questioned has error been made apparent.

The remaining points ruled appear with sufficient distinctness in the syllabus.

Judgment affirmed.