FLEMING *et al. v.* MAY *et al.,* executors.

No. 13136. MAY 20, 1940. REHEARING DENIED JUNE 14, 1940.

*Sibley & Allen,* for plaintiffs in error.

*Hull, Barrett, Willigham & Towill,* contra.

REID, Chief Justice. Mrs. Lizzie Baker Bransford, a widow without children or other heirs nearer in kin than first cousins, died leaving a will which was offered for probate in solemn form. The first cousins surviving her and who had been served with notice of the proceeding made no objection to the probate of the will. Certain second cousins (who, it is explained in the briefs, were at first, when given notice of the proceedings, thought to be first cousins)

filed a caveat in which objection was made to the probate of the will, on various grounds. On the trial in the superior court of an appeal from the court of ordinary, demurrer to the caveat was sustained; and after certain proof was made, a judgment admitting the will to probate was entered. To this judgment Carl Fleming and Lindsay Baker, the second cousins, filed their exceptions.

This case involves a construction and application of the rules of inheritance. Code, § 113-903. It is contended that under these rules of inheritance the plaintiffs in error and others of the same class as second cousins, if they could succeed in preventing probate of the will which made no provision for them, would be entitled to participate with first cousins in the estate of the decedent. In sustaining the demurrer to the caveat the court held, that inasmuch as first cousins survived the decedent, the second cousins would not be entitled to notice, or to be heard as heirs at law on the question whether the will should be admitted to probate. The argument that the second cousins are entitled to share with first cousins in equal rank as to inheritance is grounded on the proposition that, although of different degrees in relationship or kinship, nevertheless under the particular scheme fixed by our Code they stand in equal degree of *inheritance* with first cousins. The Code, § 113-903, states:

"*The following rules shall determine who are the heirs at law of a deceased person:*

"*1. Upon the death of the husband without lineal descendants, the wife is his sole heir, and upon the payment of his debts, if any, may take possession of his estate without administration.*

"*2. Whenever the husband or widow of a deceased person shall be under the age of 21 years and entitled to a share in the estate of such deceased husband or wife, he or she shall be entitled to take and hold such share without the intervention of a guardian or other trustee.*

"*3. If, upon death of the husband, there are children or representatives of deceased children, the wife shall have a child's part, unless the shares exceed five in number, in which case the wife shall have one-fifth part of the estate. If the wife shall elect to take her dower, she shall have no further interest in the realty.*

"*4. Children shall stand in the first degree from the intestate and inherit equally all property of every description, accounting*

*for advancements as hereinafter provided. Posthumous children shall stand upon the same footing with children in being upon all questions of inheritance. The lineal descendants of children shall stand in the place of their deceased parents, but in all cases of inheritance from a lineal ancestor the distribution is per stirpes and not per capita.*

*"5. Brothers and sisters of the intestate shall stand in the second degree and shall inherit, if there is no widow, child, or representative of a child. The half-blood, both on the paternal and maternal side, shall inherit equally with the whole-blood. The children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their deceased parents; but there shall be no representation further than this among collaterals. If all the brothers and sisters be dead at the death of the intestate, then the distribution is between the nephews and nieces per capita; and if any of the nephews and nieces be dead, leaving children, distribution is to be made as though the nephews and nieces were all alive, the children of the deceased nephew or niece standing in place of the parent.*

*"6. The father and mother inherit equally with brothers and sisters and stand in the same degree.*

*"7. In all degrees more remote than the foregoing the paternal and maternal next of kin shall stand on an equal footing.*

*"8. First cousins stand next in degree; uncles and aunts inherit equally with cousins.*

*"9. The more remote degrees shall be determined by the rules of the canon law as adopted and enforced in the English courts prior to the fourth day of July, A.D. 1776."*

It will be noted that after making provision in the other subsections for the various degrees of kin, both as to lineal descendants and as to collaterals, and having provided in subsection 5 that brothers and sisters shall stand in the second degree, and for representation in certain circumstances, and in subsection 6 that the father and mother shall inherit equally with brothers and sisters and "stand in the same degree," subsection 8 provides that first cousins, "stand next in degree," this subsection also providing that uncles and aunts shall inherit equally with cousins, there is no further enumeration or specific classification of relatives who may inherit the estate or property of a deceased person, except the provi-

sions contained in subsection 9 hereinabove set forth. An ingenious and somewhat plausible argument is made, to the effect that all these separate provisions of the Code section taken together go to set up a general scheme or pattern of inheritance, and that as to all of the various degrees of relationship specifically dealt with in the first eight subdivisions, being nearer in kinship than second cousins, they take the degree of inheritance to which they are there expressly assigned, and that under the language of subsection 9 all "more remote degrees" shall be determined by the rules of the canon law in the manner set forth in that subdivision; and that since under the rules of the canon law second cousins would stand in the *third* degree, and since first cousins, expressly dealt with in subsection 8, are made to stand *next* in degree to brothers and sisters, specified as in *second* degree, then an equal rank of inheritance is thereby attained as among first and second cousins.

In *Ector* v. *Grant,* 112 *Ga.* 557 (37 S. E. 984, 53 L. R. A. 723), the court was dealing with a contest between a first cousin of the half-blood on the maternal side and a second cousin of the whole-blood, each claiming the right to inherit to the exclusion of the other; and it was held: "In the distribution of the estate of an intestate a first cousin of the half-blood on the maternal side will take the estate in preference to a second cousin of the whole-blood." While it is contended that the precise point here made was not ruled in *Ector* v. *Grant,* we are asked, if we consider it controlling, to overrule that decision in so far as it militates against the contentions of the plaintiffs in error. It is true that in that case the specific ground of controversy was on the question of placing the relation of the half-blood in equal rank of inheritance with the whole-blood, and the larger part of the opinion of the court dealt with that phase of the law, both as it was declared in England and as partially preserved in our State. It is nevertheless equally true that in order to hold, as the court did, that first cousins of the half-blood inherit to the exclusion of second cousins of the whole-blood, the court necessarily rejected the contention here made. In stating the question for decision Mr. Justice Cobb said: "It will thus be seen that the question to be determined in the present case is, when an intestate leaves surviving him no widow, descendant, ascendant, brother or sister, or representative of either, who is entitled to inherit the estate, a second cousin of the whole blood, or a first cousin

of the half-blood on the maternal side?" In this connection it was said (p. 566) : "Nothing in the section provides the degree in which cousins other than first cousins shall stand. The rule to be followed in determining the relationship of cousins other than first cousins is found in paragraph nine of the section. The rule appears for the first time in our law in the Code· of 1863. In *Wetter* v. *Habersham,* 60 *Ga.* 193, it was held that if a person dies intestate, leaving no descendants or next of kin within the degrees expressly named in the Code, the heirs at law are those nearest in blood to the intestate, to be ascertained according to the rules, not of the civil, but of the canon law ;. that is, counting from the intestate up to the common ancestor, one degree for each generation, thence down the collateral line to the contestant. The number of degrees in the longer of these two lines is the degree of kindred between the intestate and the contestant. See also the case of · *Short* v. *Mathis,* 101 *Ga.* 287 [28 S. E. 918], where this rule was applied." And again (p. 567) : "It is contended, however, that because paragraph nine of the section of the Code above referred to adopts the rule of the canon law, this is an indication that it was the intention of the legislature to keep in force all the provisions of the canon law in reference to inheritance, where a contrary rule was not expressly laid down in the statute. We do not think this position is sound. The rule of the canon law is referred to for no other purpose than to provide a method of counting the remote degrees of relationship. Under the very terms of the statute, it is not to be looked to for any other purpose. It furnishes simply the method of counting the degrees of relationship in those cases where the degrees are not fixed in the preceding paragraph of the section."

We do not find a subsequent application of that exact principle to similar facts, and counsel seem to concede that the question has not again been made in this court. In *Williams* v. *Trust Company of Georgia,* 185 *Ga.* 643 (196 S. E. 74); the question considered related only to whether distribution of the estate in that case should be per capita or per stirpes as among the surviving nieces and nephews; but in a discussion of the rules of inheritance to arrive at a solution of the problem there presented, it seemed to be recognized that the rule above referred to prevailed in Georgia, and the case was therein cited as authority for that proposition. Likewise, in considering who among the relatives of the deceased

was entitled to administer the estate of the decedent, in *Dawson* v. *Shave,* 162 *Ga.* 126 (132 S. E. 912), this court, although the contest there was not between these two classes of kindred, cited *Ector* v. *Grant,* supra, as stating the rule on the subject. The case of *Wetter* v. *Habersham,* 60 *Ga.* 193, 199, is relied on to support the view of the plaintiffs in error. It was there stated: "It is obvious that as to all these degrees of kindred and relationship expressly mentioned and set down in the section of the Code under consideration, they are to occupy the position or degree of kindred to which the words of the act assign them." We agree to the contentions in behalf of plaintiffs in error that degrees of relationship and degrees of inheritance do not, of necessity, run coincidentally, and that statutes on the subject might make arbitrary provision as to how degrees of kinship might be fixed or classified in reference to inheritance. In *Wetter* v. *Habersham,* supra, the rules of the canon law were applied because the person who died intestate left "no descendants or next of kin within these degrees expressly named" (in the pertinent provision of the Code section). Likewise, in *Ector* v. *Grant* they were conceded to be applicable only in cases where there were no heirs nearer in degrees of kindred than the class mentioned in what is now the ninth subsection of the rules of inheritance, supra. It would seem quite clear that the provisions of subsection 9 can have no application so long as there are surviving relatives expressly named in the sections preceding. The scheme or system or, to use the language of the Code itself, "the rules of inheritance" contemplate a plan like this: Down through these specified degrees of kindred or relationship we point out their respective preference in the distribution of an estate, but beyond that point of kinship, that is, if there be those not within these enumerated groups, or, in the language of the Code, "the more remote degrees," then they (*as among themselves*) shall inherit in such rank or degree as may have been fixed "by the rules of the canon law as adopted and enforced in the English courts prior to the 4th day of July A.D. 1776."

The decision in *Ector* v. *Grant,* supra, is particularly applicable in the present case, where there is substantially an absolute identity of questions presented. In the reported case Benton B. Ector, who claimed to be the sole heir of Frank M. Ector, filed a caveat to an application by the administrator to sell certain property. On ap-

peal the superior court held that Benton B. Ector was not an heir at law of the intestate, and the caveat was overruled. In the case at bar a caveat to the probate of a will was filed by second cousins, and on appeal this caveat was stricken on the ground that the second cousins were not heirs at law, where it appeared that first cousins survived.

Since the rules of inheritance are fixed by statute in this State, making the use of some principles taken from the canon law, some from the common law, and some of purely statutory origin, general text authority on the question here involved is not perhaps of especial value; yet we find the following statement in 18 Corpus Juris, 837, § 63: "As has been seen, cousins, being children of uncles and aunts, and not being entitled to take by representation, are excluded by living uncles and aunts. Likewise, except in a few jurisdictions where the statutes are construed to allow the descendants or representatives of first cousins to take by representation, first cousins are entitled to take the property of an intestate to the exclusion of second and third cousins, and children or other descendants of first cousins." *Ector* v. *Grant,* is there cited as being the exponent in the Georgia decisions of this majority rule. While, as stated, the legislature may fix arbitrarily these varying degrees of inheritance, it would be so unnatural to place second cousins (unless it be by some rule of representation) in equal rank with first cousins that we should not wish so to construe the statute, unless required to do so by the clearest terms or language. The request to overrule *Ector* v. *Grant,* supra, is denied, and the principle there announced, so far as pertinent to the issues here dealt with, is approved.

Nor do the plaintiffs in error acquire equal rank with the surviving first cousins by reason of representation. The testatrix left no children or representatives of deceased children. The provisions of subsection 5 (§ 113-903) limit representation among collaterals to the children or grandchildren of brothers and sisters. In *Wetter* v. *Habersham,* supra, we find the following statement on the question of representation: "From quite an ancient date representation was admitted in England as far as the children of brothers and sisters. And such was the law of Georgia down to the act of 1859. By that act representation was extended to grandchildren of brothers and sisters. But the ancient inhibition which came

across the water with our forefathers was retained, namely, 'that further than this there should be no representation among collaterals.'" See the discussion in *Williams* v. *Trust Company of Georgia,* supra. There seems to be no theory by which, under the facts in the present record, these second cousins could claim by representation.

It is insisted, however, that even under the rule above made the judgment of the lower court should be reversed, because of certain other alleged errors resting upon a claim that insufficient proof was made to authorize the probate of the will. A challenge of that character could be made only by some person who could profit by failure of the probate, and could not be made by one who stands, in effect, a stranger to the estate. In *Wetter* v. *Habersham,* supra, we find the following statement relied upon by plaintiffs in error: "When a will is propounded for probate, whether the proceedings be initiated by the executors or by the heirs at law, the object of the investigation is to determine the question of testacy or intestacy, and it can never be said that the litigation is ended, unless all persons have been heard or have had an opportunity to be heard, who either really have an interest or bona fide claim to have an interest." We consider the statement as to those "who either really have an interest or *bona fide claim to have an interest"* (italics ours) to mean no more than that such persons shall have the right in connection with the probate proceeding to have their claims heard and considered; and that if it be determined, as it has been here, that such persons do not in fact have an interest in the estate, then no useful purpose could be served by permitting them to make contest with the propounders. Such a view accords with the uniform rulings of this court such as stated in *Davis* v. *Jasper,* 119 *Ga.* 57 (45 S. E. 724), as follows: "This court will in no case undertake to pass upon questions presented by a bill of exceptions, when it affirmatively appears that, even if the judgment of the court below were reversed, the plaintiff in error would derive no benefit from the adjudication." See *Arnold* v. *Arnold,* 180 *Ga.* 560 (179 S. E. 715); *Grizzel* v. *Grizzel,* 190 *Ga.* 219 (9 S. E. 2d, 247); *Howell* v. *Howell,* 190 *Ga.* 371 (9 S. E. 2d, 149).

*Judgment affirmed. All the Justices concur.*