## DEANS v. DEANS.

1. The court refused to instruct the jury, as duly requested in writing, in the language of the Civil Code, § 3832. The testator was a father, leaving one child but no wife. His entire estate, except a fund to be used in preserving his family cemetery lots, was willed to his mother, brothers, and sisters, and one person not related to him. *Held*, that the requested charge was applicable to the case, and was erroneously refused.
2. None of the other grounds of the motion show cause for a reversal. No ruling is made on the sufficiency of the evidence to support the verdict.

No. 6566. JULY 10, 1928.

Appeal from probate of will. Before Judge Pomeroy. Fulton superior court. March 23, 1928.

On November 23, 1926, W. O. Deans, as executor, filed for probate the alleged will of R. E. Deans, the petition therefor alleging that W. O. Deans, J. H. Deans, Mrs. Susan M. Deans, Mrs. George H. McKee, Mrs. T. L. Carnell, Mrs. Frank Bamford, and Frank Deans were the heirs at law. Frank Deans, a minor, by his guardian ad litem, filed a caveat setting up that the paper offered as a will was not the will of R. E. Deans, and denying that the persons above named were the heirs at law of the alleged testator. The caveat alleged that Frank Deans was the sole heir at law of R. E. Deans, by virtue of being his only child; that the alleged will, if executed at all, was executed by R. E. Deans under a mistake of fact as to the existence of the caveator, induced by the mother, brothers, and sisters of the alleged testator; that on December 25, 1924, the date on which the paper offered for probate was alleged to have been executed, which was fifteen days before the death of R. E. Deans on January 9, 1925, the alleged testator was laboring under a monomania as to the relation between him and caveator, having been led to believe, by false and fraudulent representations of said mother, brothers, and sisters, that caveator was the son of another man, and that the marriage between R. E. Deans and the mother of caveator was not a lawful, bona fide or real marriage, and was also laboring under a similarly falsely induced conclusion that caveator was not alive; that the mother of R. E. Deans (Mrs. Susan M. Deans) and her children, who are beneficiaries under the alleged will, endeavored by every kind of misrepresentation and persuasion to prevent the marriage of R. E. Deans and caveator's mother, falsely accusing caveator's mother of being a woman of bad character; that these persons continued their malicious repre-

sentations and interferences after said marriage and until they had brought about a divorce between caveator's parents, thereafter still further continuing the same; that these direful influences and willful machinations ran R. E. Deans insane on the subject of his wife and child, producing thereby a weakened state of mind, in which R. E. Deans was when he executed the purported will, if he executed it at all, in which he was easily led to make no mention of caveator, his only heir; that those machinations were so constant and insidious as to admit of no escape from them, combining false report with evil report, and these with persuasions craftily applied; that the said beneficiaries took charge of R. E. Deans in his last illness when it was known he would soon die of cancer, and did not allow him to be out of their custody or control until said alleged will was prepared; that a conspiracy to defraud caveator is borne out by the false representation in said executor's petition for probate in listing false names as heirs at law of R. E. Deans; that the alleged will itself is no will, but the product of a conspiracy to defraud caveator; that in his last days caveator was prevented from seeing his father, from sending him flowers, from communicating with him, said conspirators always contriving, by false information as to street address or otherwise, to prevent delivery of communications and prevent visits between caveator and his father, all to prevent R. E. Deans from knowing of caveator's existence after it was represented that he was not the son of R. E. Deans and that he was dead; that R. E. Deans was even led to believe that he had never been married to the mother of caveator, whereas they were married as a matter of fact on December 26, 1904, in the study of the Westminster Presbyterian Church, Charleston, South Carolina; that R. E. Deans in fact died of a malady which naturally had weakened his mind and the alleged will was made only a short time before death; that said scheming beneficiaries, to effectuate their fraud, offered the alleged will for probate at first without mentioning the name of caveator as an heir at law, though they well knew he was such, and it became necessary for him to file in the court of ordinary a petition making this fact known, in order to set aside a fraudulent probate which was in fact obtained; that at a hearing on said petition the alleged beneficiaries, or at least a number of them, gave testimony that caveator was not the son of R. E. Deans, and that he was not of legitimate birth; that nevertheless the court

of ordinary found that caveator was a son of R. E. Deans under a lawful marriage with caveator's mother, and set aside said probate; that as a matter of fact, due to all the said activities of the alleged beneficiaries, R. E. Deans, at the time of the alleged execution of said purported will, was not mentally capable of knowing and appreciating the facts which caveator has alleged.

The caveat alleged specifically also as follows: "Said alleged will, if executed at all, was executed under undue influence, and is not a true will of said R. E. Deans. Said undue influence consisted in the beneficiaries under said alleged will taking caveator's father into their home, surrounding him with three brothers, three sisters, and a mother, and pretending that all of them loved him and that they were the only persons on earth who did love him, and, especially during said weakened physical condition, administered to caveator's father in such a way as to overpower his mind and cause him to be willing to do anything they suggested, regardless of his own will."

On the issue thus made, after a hearing the ordinary passed an order reciting that "the caveat of Frank Deans is sustained, and the said alleged will of Robert E. Deans is denied probate." The propounder entered an appeal to the superior court, where the case was tried and a verdict was rendered for the propounder. The exception is to the overruling of a motion for new trial.

*Horace Russell, E. A. Stephens, Colquitt & Conyers,* and *Edwin G. Bell,* for plaintiff in error.

*Dillon, Calhoun & Dillon, Reuben R. & Lowry Arnold,* and *Paul S. Etheridge,* contra.

GILBERT, J. 1. One ground of the motion for new trial complains that the court erred in refusing to charge the jury, as duly requested in writing, as follows: "A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the State; he may bequeath his entire estate to strangers, to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and, upon the slightest evidence of aberration of intellect, or collusion or fraud, or any undue influence or unfair dealing, probate should be refused." This request is in the language of section 3832 of the Civil Code. From the briefs of counsel it seems that the court declined the request on the theory that under the facts of the case the prin-

ciples embodied in the request were not applicable. There was evidence tending to show, and for present purposes it will be assumed that the facts did show, that the testator at his death left one son, the caveator. The mother of this son was divorced from the testator a considerable time before his death. The defendant in error insists that said Code section is not applicable, or, if applicable, the refusal was not such error as would require the grant of a new trial, because the verdict actually rendered by the jury was demanded, and the error, if any, was harmless. There is evidence in the record tending to show that undue influence was exerted upon the testator. That evidence is such that the jury would have been authorized to find in favor of the caveator on the ground of undue influence, if Code section 3832 was applicable to the case. It is further insisted that under a liberal construction of the section it is applicable only where the testator leaves "both wife and child," and not a child only, as in the present case; that "a man must be so tied up with domestic relations as to have that quantum of domesticity. A little of it, such as a child, will not do. He must be overpowered by both wife and child before the law will consider that his intellect is wavering by leaving the estate to strangers." We think that the contention that the Code section would be applicable only where testator leaves "both wife and child" is not justified by the language in the section. It appears obvious that the General Assembly, in adopting this section as a part of the Code, sought to give added protection to wives or children of testators; and for us to construe the section as contended above would be to nullify that purpose in a very large number of cases. There seems to be no just reason to suppose that the General Assembly meant to deprive the wife or child of this protection where only a wife, or only a child or children, survive the testator. Moreover, if that construction is justified, then it would be equally reasonable to deny application of the principle to a case where there was only one child and not several children. It is also argued that the entire estate was not left to strangers, but some of it to care for a cemetery lot. Such a bequest was certainly not for the benefit of testator's child, and did not benefit either the caveator or the propounder, or those for whom he offered the will for probate, in any pecuniary sense. It denotes a sentiment entirely praiseworthy, but nevertheless the child of the testator was excluded therefrom. In this case

the disposition of the estate was entirely to the exclusion of. the child. If a different construction should be adopted, a testator could entirely exclude his wife and children by merely bequeathing a small sum to maintaining a cemetery or like purpose, and all else to strangers, and yet avoid the application of the Code section. It is also contended that to construe the section as insisted upon by plaintiff in error would be to give it an absurd construction. As to this argument we think it sufficient to reply that the wisdom of the legislation is a question wholly within the province of the General Assembly and not the courts. Whether foolish or wise, it is the duty of the courts to enforce all laws duly enacted, unless void because of conflict with the constitution.

The duty devolves upon us for the first time to decide what is the proper meaning of the word "strangers" as employed in Code section 3832. Upon the proper determination of this question necessarily depends the applicability of the principle to the facts of this case. It is well recognized that the word "strangers" in legal contemplation often has a meaning distinctly different from its meaning in common usage or parlance. For instance, one who is not a party to a contract is generally referred to as a stranger to the contract. The word is often used in a legal sense to convey the meaning converse to "privy" or "privity." In 36 Cyc. 1332, the word "strangers" is defined as "A word defined in the plural as third persons generally, all persons in the world except parties and privies; . . one not in privity." In 6 Words & Phrases (1st ed.), 5608, we find: "A privy in blood is one who derives his title to the property in question by descent. Orthwein v. Thomas, 127 Ill. 554 (21 N. E. 430, 4 L. R. A. 434, 11 Am. St. R. 159)." In the statute in question the legislature created a special and additional protection for a restricted class, that is to wives and children of testators. Children are privies in blood of the father. They are privy in estate where there is no will; they are successors and heirs of the property of the father. By naming the wife and children only as members of this class, the legislature meant, we must conclude, to exclude all other persons and to restrict the class for which special protection was afforded to those specifically named, and to classify all other persons as "strangers." It restricted the class to privies; that is, to persons who are in privity with the father and husband. The class does not even include the husband. There

is no restriction on the wife as to the disposition of her property with regard to the husband, under this Code section. Where a wife wills property, so far as this Code section is concerned, she may leave all she possesses to persons other than her husband, and the husband will find no protection under this section. As already indicated, we think the section applies where the husband or father is testator and where he leaves a wife and child or a wife and children, or a child, or children, or only a wife. From the above reasoning, which we think is sound, it follows that in any case where a father, who has no wife, by will leaves his entire estate to persons other than his child, he is leaving it to "strangers" within the meaning of Code section 3832, regardless of what blood relation such other persons may be to him. If his child is in life, other relatives are strangers in the sense of that section. Such a disposition by a father of his property deprives the child who, in the absence of a will, would inherit.

The above section of the Code has been referred to in a number of decisions of this court, but in no former case could it be applied because of the facts. In *Wetter* v. *Habersham,* 60 *Ga.* 193, the question of applicability of this section first arose. It was properly held that it was not applicable, because a wife was the testatrix and there were no children. The contest was between other relatives. In *Chedel* v. *Mooney,* 158 *Ga.* 297 (123 S. E. 300), the question again came up. The testatrix was the wife, and the husband caveated the will. A request was duly presented to the court, embodying the principles of the Code section in question, together with a construction thereof as follows: "The word 'strangers' used in this statute means anybody other than a wife, husband, or child, or the dependents thereof; that is, some one who would not inherit in the absence of a will. Where a husband, who would be an heir at law, is excluded as a legatee and the property given to others who would not inherit under the laws of inheritance, this would be strangers as to caveators." The refusal of this request was made a ground in the motion for new trial. This court held that the request was not applicable under the facts of the case. It is plain from a reading of the section that the husband is not one of the class for whom special and additional protection is afforded. Mrs. Chedel left no child, but a husband only. It is interesting to note, however, that the request to charge in that case sought pre-

cisely the same construction of the word "strangers" as we have placed in the present case, except that it included the husband along with the wife and child. The court erred in refusing to instruct the jury as requested, and on this ground the judgment refusing a new trial must be reversed.

2. There are numerous grounds in the motion for new trial. Many are repetitions of the general grounds. At least one ground is not mentioned in the brief of counsel for the plaintiff in error, and will therefore be treated as abandoned. Others assign error on portions of the charge, and on rulings on the admissibility of evidence. None of these grounds, however, show any error. As is customary, since the case is remanded for a new trial, no ruling is made on the sufficiency of the evidence to support the verdict.

*Judgment reversed. All the Justices concur.*