DEANS *v.* DEANS.

No. 7625.   JANUARY 13, 1931.

678

*Paul S. Etheridge, B. P. Gambrell, Dillon, Calhoun & Dillon,* and *Reuben R. & Lowry Arnold,* for plaintiff.

*Jones, Fuller, Russell & Clapp, Walter T. Colquitt,* and *Edwin G. Bell,* for defendant.

RUSSELL, C. J. (After stating the foregoing facts.) In the last appearance of this case before the Supreme Court (*Deans* v. *Deans,* 166 *Ga.* 555, 144 S. E. 116) the judgment of the superior court was reversed because the court refused to charge the jury, as duly requested in writing, in the language of the Civil Code, § 3832. This court held that as the testator was a father leaving one child but no wife, and since he had devised his entire estate (except a fund to be used in preserving his cemetery lot) to his mother, brothers, and sisters, and one person not related to him, his entire estate had been bequeathed to strangers to the exclusion of his son. This made it not only necessary but absolutely essential that § 3832 should be given in charge to the jury, but also that the jury be instructed that where a testator has excluded his wife or his child or children and left his estate to strangers, then the case is to be tried by the rule of evidence prescribed in this code section, which declares that "A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the State; he may bequeath his entire estate to strangers, to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and, upon the slightest evidence of aberration of intellect, or collusion, or fraud, or any undue influence or unfair dealing, probate should be refused. . ." In passing upon the peculiar applicability of this code section to the evidence in the case it was necessary to construe the meaning of the word

"strangers" as employed in Code section 3832. The testator having left his estate to his mother, brothers, and sisters, as well as to Miss Lawrence, a very intimate friend, it could not be held that any of these parties were "strangers" in the popular sense in which the term is ordinarily used. The testator was intimately acquainted with all of the devisees, and a majority of them were his close kinsmen, and would have been his heirs, had he not left a son surviving. In construing the meaning of the word "strangers" as used in the connection in which it is employed in Code section 3832, Mr. Justice Gilbert, in *Deans* v. *Deans,* supra, speaking for the entire court, said: "It is well recognized that the word 'strangers' in legal contemplation often has a meaning distinctly different from its meaning in common usage or parlance. For instance, one who is not a party to a contract is generally referred to as a stranger to the contract. The word is often used in a legal sense to convey the meaning converse to 'privy' or 'privity.' In 36 Cyc. 1332, the word 'strangers' is defined as 'a word defined in the plural as third persons generally, all persons in the world except parties and privies . . one not in privity.' In 6 Words & Phrases (1st ed.), 5608, we find: 'A privy in blood is one who derives his title to the property in question by descent. Orthwein *v.* Thomas, 127 Ill. 554 (21 N. E. 430, 4 L. R. A. 434, 11 Am. St. R. 159).' In the statute in question the legislature created a special and additional protection for a restricted class, that is to wives and children of testators. Children are privies in blood of the father. They are privy in estate where there is no will; they are successors and heirs of the property of the father. . . From the above reasoning, which we think is sound, it follows that in any case where a father, who has no wife, by will leaves his entire estate to persons other than his child, he is leaving it to 'strangers' within the meaning of Code section 3832, regardless of what blood relation such other persons may be to him. If his child is in life, other relatives are strangers in the sense of that section." As pointed out by Mr. Justice Gilbert, in two prior cases decided by this court, *Wetter* v. *Habersham,* 60 *Ga.* 193, and *Chedel* v. *Mooney,* 158 *Ga.* 297 (123 S. E. 300), this section was held not to be applicable, in the *Wetter* case, because the wife was the testatrix and there were no children, and in the *Chedel* case the testatrix left no child but a husband only. In section 3832, which formed a distinct class to protect—

the wife and children of a testator, there is no reference or provision for the husband, and therefore no law, so far as we know, upon which the husband could caveat his wife's will, except those provided for any other heirs who may be of the opinion that they have lawful grounds to caveat a will about to be propounded which is inimical to the interest of such heir. Learned counsel for plaintiff in error contend, because the subject of "undue influence," as referred to in section 3832 of the code, was referred to arguendo, that, upon the maxim inclusio unius exclusio est alterius, evidence of aberration of intellect, or collusion, or fraud, or any unfair dealing is excluded from the consideration of the jury, and that reference to these circumstances on the part of the trial judge was error in the last trial; this for the reason, as insisted, that there was no evidence to show either aberration of intellect, or collusion, or fraud, or any unfair dealing. When the case was here before, it was expressly said that no ruling was made on the sufficiency of the evidence to support the verdict.

■ In the present case, in addition to the three general grounds, movant presented an amendment to the motion for a new trial containing thirty-nine additional grounds, and error is assigned in the bill of exceptions to the judgment overruling the motion and refusing a new trial: Each and all of the exceptions have been carefully and critically examined, and may be divided into three classes: (1) Errors of the court in charging the jury, and in refusing to charge the language requested in certain written requests. (2) Errors in the admission of testimony. (3) The entire insufficiency of the evidence to support a verdict in favor of the caveator. The first sixteen grounds of the amendment to the motion for new trial assign error upon instructions delivered by the court to the jury in the course of the·charge as delivered. The 17th, 18th, 19th, 20th, 21st, 22d, 23d, 24th, 25th, 26th, 27th, 28th, 29th, and 30th grounds deal with the failure of the court to give the requested instructions referred to in these' grounds. All of the assignments of error based upon the instructions of the court as delivered, or overruled, we hold to be without merit. These assignments of error are clearly based upon a misconception of the purpose of the lawmakers in adopting section 3832 of the Code of 1910, and thereby making it the law of this State. *Central Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). It has

been held by this court that the power of reasonable classification is one of the inherent prerogatives of the General Assembly; and we are of the opinion that the facts of this case demonstrate the necessity of such a classification. In the classification in favor of a testator's wife and children, or his wife if he has no children, or his child if he has no wife, the rules of evidence applicable to the class of wills segregated and set apart by section 3832 are entirely different as applicable to the burden and quantum of proof from those recognized in the probate of wills which are unaffected by the provisions of section 3832. Under the general rule, it is well settled that the burden of proof rests upon the caveator to establish, by a preponderance of the evidence, any ground by reason of which he claims a will should be set aside and avoided. In the case at bar, and under the provisions of section 3832, if one who has been *altogether* excluded in a will establishes the fact that he is a son of the testator, he is not required to prove by the preponderance of evidence that the testator was of unsound mind as defined by our courts, or that undue influence was exerted, in that strictness which has been often indicated in the rulings of this court; but the legislature supplies a new rule, which this court has held the trial judge must give in charge to the jury, that if it appears that the testator has, as is his right, bequeathed his entire estate to strangers, the will should be *closely scrutinized,* "and upon the slightest evidence of aberration of intellect, or collusion, or fraud, or *any* undue influence or unfair dealing, probate should be refused." In other words, under the general rules of evidence, every presumption is in favor of the probate of a will after it is shown that the testator was of sound mind and disposing memory at the time the will was executed. Under section 3832, if it appears that the testator has excluded his wife, if he has no child, *or his wife and child* if he has both, there is but little, if any, presumption in favor of the propounder; for the will is to be closely scrutinized, and upon the *slightest* evidence of aberration of intellect, *or* collusion, *or* fraud, *or* any undue influence *or* unfair dealing, probate should be refused. Rules as to the nature of proof and the quantum of evidence necessary for a caveator to produce and present to the court and jury, in ordinary cases of probate of wills, can have no application in the face of the declaration that probate of a will of the class referred to in section 3832

should be refused upon the *slightest* evidence of any of the ingredients or operative causes set forth in the code section. The law does not define the term "slightest evidence," but it is the superlative degree of the adjective slight, and therefore must mean *very* slight. In other words, to use the language of Chief Justice Bleckley, if we are to "let the General Assembly charge the jury in its own words," the legislature tells the jury "that very slight evidence (in a case coming within the terms of section 3832, and to which that code section is applicable) of aberration of intellect, or collusion, or fraud, or any undue influence or unfair dealing, if you believe it is true, will make it your duty to refuse probate of the will." There was no error in failing to give the instructions which were requested in writing, for the reason just stated; and in view of our ruling when the case was here before, the requests were not applicable and were properly refused.

■ The thirty-first ground of the amendment to the motion for a new trial assigns as error the court permitting Mr. Conyers, counsel for Frank Deans, to ask the caveator, "What is what is known as the Rhodes Scholarship?" and permitting him to answer "It is a scholarship founded by Cecil Rhodes for the purpose of breeding international amity." The propounder objected on the ground that the question and answer were not material, and the court overruled the objection. It is stated in the assignment of error that the witness had previously testified that he came to Atlanta in December, 1924, from the University of Michigan, to stand an examination for the Rhodes Scholarship after having been recommended for the examination by the authorities of the University of Michigan. In the circumstances of the case the court did not err in overruling the objection. A father suffering from no aberration of intellect, and uninfluenced, and not overreached by fraud and misrepresentation, and unless there had been some kind of unfair dealing, would ordinarily have wished to have seen his son, and would have appreciated the effort of the son to see him after their long separation. There was evidenc authorizing the jury to find that one of the brothers of the testator, in particular, was very anxious that the testator should not receive any communication from this absent son. Furthermore, there was testimony tending to throw discredit upon all the statements of the caveator, and the jury had a right to consider the circumstance that the witness had been

recognized by the University of Michigan for examination for the Rhodes Scholarship. But should we concede that the judge erred in the definition of what was meant by the words "Rhodes Scholarship," it was immaterial in the case (and this is the only point on which there was objection), and the error is so insignificant that it would be held to be harmless. There is no merit in the assignment of error contained in the 32d ground, in which the propounder's counsel proposed to prove by Frank Deans that at a previous trial on a named date, his mother testified that she married Leuchtenburg the following Monday after the Thursday on which she was granted a divorce decree from R. E. Deans. The testimony was altogether irrelevant, because, even if the court had permitted him to swear that Leuchtenburg married his mother the very first day after she had been granted a divorce on Thursday, it could not have properly influenced and affected the jury in their consideration of the case. There is no merit in the exception to the ruling set forth in the 33d ground. The objection now made to the testimony set forth in the 34th ground, under a well-settled rule, presents nothing for the consideration of this court; for while counsel for the propounder now says "that the testimony was not admissible for any purpose whatever, and that the secret object which caveator had in going to see the witness Harding was not admissible for him to state and that his purpose must be judged solely by his actions," at the time the evidence was offered they only "objected and moved to rule out said testimony," and the objection was overruled. To merely object, without stating any reason upon which the objection is predicated, is futile, and amounts to no more than if no objection at all had been offered. Ground 35 is without merit, and the trial court properly sustained the objection to the question asked the witness Calhoun, upon the ground that the same was leading. So much of the Alabama decree referred to in the 36th ground, which purported to give the testimony of Mrs. Frances B. Deans and Mrs. Mollie Sanders in the proceeding for a divorce brought by Mrs. Deans against her husband, was inadmissible and was properly excluded. In the 37th ground it is alleged that counsel for the propounder asked Mrs. McKee, a witness for propounder, the following question: "During your brother's last illness, did Frank Deans call on him to see him?" and the witness answered, "He did not." Objection that the question was leading was sus-

tained and the question, and answer were excluded. The propounder says this ruling is error, and says the question was not leading. The question and answer were correctly excluded by the court. A question can always be held to be leading when it can be answered in a monosyllable either yes or no. There is no merit in the assignment of error contained in the 38th ground alleging that the court erred in ruling out evidence as to the value of the property which has gone down since it was taken out of the hands of the plaintiff in error. The propounder excepts upon the ground that the testimony was admissible to show what the value of the estate was at the time of the trial as affecting the credibility of various witnesses in the trial. Granting that the evidence might be useful for that purpose, there is no rule of law by which witnesses can be impeached en masse. Under the rules as to impeachment, each witness whom it is sought to impeach must be singled out and attacked in some of the methods provided by law. The exception in this case does not even indicate to the court the names of the different members of the aggregation sought to . be impeached in wholesale, so as to be attacked in platoon formation. The exception taken in the 39th ground is without merit, as will appear from the statement of facts, wherein this ground is fully set forth. Before the witness answered the question to which objection was made, following the suggestion of the court, caveator's counsel put the question hypothetically. Before the objection of propounder's counsel he had stated a portion of the hypothetical facts, which was completed, so the witness had the right to give his opinion as to whether a person under the circumstances named "had let down." The objection urged now is that the facts stated were not sufficient upon which to form an opinion, but the objection which was made at the time was "on the ground that it called for a conclusion, and that no witness could give such an opinion." The court could rule only upon the objection as then made, and at that time the ruling of the court was not invoked as to whether the circumstances stated were sufficient to authorize the witness to give his opinion.

■ Without specifically referring to the many circumstances in the evidence, the jury were authorized to find there was a preconceived plan on the part of the brothers of the testator (perhaps participated in by the entire family) to exclude the defendant in

error from any participation in his father's estate. Under the provisions of section 3832 of the Code, it is not for the judge, but the jury, to determine whether there are any circumstances, even very slight, which make it the duty of the jury to refuse probate of a will such as that involved in this case; and unless there were no circumstances that would raise even a slight inference that all of the conditions set forth in the code section would authorize or require a jury to refuse probate, the court would not be authorized to substitute his judgment for that of the jury in finding that there were circumstances, even though slight, evidencing either undue influence, fraud, collusion, or unfair dealing. In this case upon review, we can not say that the evidence as to each and all of the circumstances under which a jury should refuse probate is insufficient to authorize the finding embodied in the verdict.

*Judgment affirmed. All the Justices concur.*