## PERETZMAN v. SIMON et al.

No. 12064. MARCH 8, 1938. REHEARING DENIED MARCH 24, 1938.

*Winfield P. Jones, Reuben A. Garland,* and *Bryant & Pittman,* for plaintiff in error.

*Frank Carter* and *George & John L. Westmoreland,* contra.

ATKINSON, Presiding Justice. On December 16, 1936, Mrs. Jennie Borochoff executed a will in Fulton County, Georgia, and afterward died January 3, 1937, in Miami, Florida. Mrs. Rose B. Simon, Mrs. Nellie B. Borochoff, daughters of testatrix, and John L. Westmoreland, her attorney, were nominated executors. The will was offered for probate in solemn form. Mrs. Ida B. Peretzman interposed a caveat, in which a copy of the will was set forth. The paper showed that the testatrix had signed it by making a mark. The fifth item was: "I give, devise, and bequeath to my daughter, Ida B. Peretzman, the sum of one thousand ($1000) dollars, subject to the conditions and provisions of item nine of this will. I give this amount and no more to my daughter, Ida B. Peretzman, because my said daughter, Ida B. Peretzman, has on many occasions failed to treat me with the respect and consideration with which a daughter should treat her mother, and has on numerous occasions clearly demonstrated that she has no love for me whatever. In the event that my said daughter, Ida B. Peretzman, is not living at the time of my death, or should die before the same amount is fully paid to her, I desire and direct that said gift or bequest, or remainder thereof, shall revert to and become part of the residue of my estate, to be disposed of as hereinafter provided. My executors hereinafter named may pay the bequest named in this item, or any part thereof, at any time, within two years after my death, in their sole discretion." Item nine provided that should any of the beneficiaries or legatees seek to set aside any of the provisions of the will on any ground, the bequest to such person shall be forfeited. The alleged grounds of caveat were (1) testamentary incapacity, and (2) fraud and undue in-

fluence exercised over the testatrix. In elaborating the ground of attack as to fraud and undue influence, it was alleged in part that the testatrix "did not execute said pretended will freely, but was moved thereto by undue influence and persuasion over her by Mrs. Rose B. Simon, Mrs. Nell B. Borochoff, and Mrs. Kate B. Herron, the three legatees named in the second item . . and therefore . . said pretended will is not the real will of the said Mrs. Jennie Borochoff." And further, that the testatrix had been suffering for a number of years with diabetes, from which she had recently been confined in a hospital; that a few days before execution of the will she was carried to her home in Atlanta, still under treatment of physicians, put in bed, and was continuously under immediate control and influence of her daughter, Mrs. Rose B. Simon; that while in a weak condition the testatrix was carried by Mrs. Simon to the law office of Westmoreland, where by previous arrangement between Mrs. Simon and the attorney the will had been prepared. The testatrix could neither read nor write, and spoke English imperfectly. The will "was based upon misstatement of fact as to the conduct and affection of this caveatrix toward her mother, . . which said misstatement of fact was produced and brought about by the fraud [and] misrepresentations of the said Mrs. Rose B. Simon, and by virtue of the fact that said will was signed by . . the said testatrix, without being apprised of the contents thereof and being unable to understand or know just what said will provided for;" that the will was procured while the testatrix "was mentally incompetent to make a will and by virtue of a mistake as to the conduct and affection of caveatrix for her mother, engendered by undue influence and by the false and fraudulent misstatements of said Mrs. Rose B. Simon upon her;" that "during the past four or five years Mrs. Rose B. Simon and her husband have been living with said testatrix, and . . during said time the said Mrs. Rose B. Simon had gradually taken over all the affairs of the said testatrix and looked after and managed the same, and had caused the said testatrix to become so dependent upon her that, in view of her weakened mental and physical condition as aforesaid, she was very susceptible to suggestion and readily inclined to believe the statements which said Mrs. Simon and her sister, Mrs. Nell B. Borochoff, frequently made [to] her, to the effect that caveatrix did not love her and treated her

with disrespect, all of which were false and untrue; that she was thereby unduly influenced to such an extent as to give caveatrix only $1000 as her portion of said testatrix's large estate, and to make her mark on a will containing the false and fraudulent statements that caveatrix did not love her mother and had treated her with disrespect and lack of consideration, with the result that the influence thus unduly exercised upon said testatrix, accompanied by false and fraudulent statements, in view of her weakened physical and mental condition, was such as to destroy her volition, and constrained the signing of the will containing the aforesaid false and fraudulent statements; and said will is therefore inoperative as to caveatrix."

On trial of appeal to the superior court, a verdict in favor of the propounders was returned. The exception is to the overruling of the caveatrix's motion for a new trial.

1. "The allowance of a leading question in the examination of a witness is generally matter of discretion and no cause for a new trial." *Howard* v. *Johnson,* 91 *Ga.* 319 (3) (18 S. E. 132); *Roberts* v. *DeVane,* 129 *Ga.* 604 (3) (59 S. E. 289); *Higdon* v. *Williamson,* 140 *Ga.* 187 (3) (78 S. E. 767); *Gore* v. *State,* 162 *Ga.* 267 (5) (134 S. E. 36); *Georgia, Florida & Alabama Railway Co.* v. *Sasser,* 4 *Ga. App.* 276 (9) (61 S. E. 505); Code, § 38-1706. The rulings of the judge in allowing the questions to be answered over the objection that they were leading, as complained of in grounds 3, 4, 5, and 14 of the motion for new trial, show no cause for a reversal. The decision in *Sivell* v. *Hogan,* 115 *Ga.* 667 (42 S. E. 151), merely held that one of two questions propounded to the witness was leading, and that the other was not leading. The judgment was reversed principally upon other assignments of error.

2. It was not error to admit in evidence, over the caveatrix's objections, the original will copied in the caveat, in connection with accompanying extrinsic evidence tending to show its execution. *Shankle* v. *Crowder,* 174 *Ga.* 399 (4) (163 S. E. 184).

3. It was not error to reject hearsay testimony offered by the caveatrix, that the husband of one of the propounders was a wealthy man.

4. The exclusion of testimony that Mrs. Rose B. Simon "took control of things," as complained of in ground 8 of the motion

for a new trial, which sets forth other testimony of the witness that had been admitted, substantially to the same effect, does not afford ground for reversal.

5. Testimony that the testatrix and her said daughter Rose showed witness "a big fur coat," and said, "See this stolen coat we bought on Decatur Street for $5; this is a $500 coat," was offered by the caveatrix for the purpose of showing exercise of influence over the testatrix. The motion for new trial does not show the date of the declaration. The testimony was objected to on the ground of irrelevancy, and that the transaction took place more than nine years before execution of the will. The judge ruled, *"it out now,"* but stated, "If you can show how it is relevant before we get through, I will let you reoffer it. I think it is too remote from the execution of the will." It was not reoffered. The rejection of the evidence is not cause for reversal.

6. Testimony was offered as to a declaration by Mrs. Malloy, one of the daughters of the testatrix, concerning her conversation with the testatrix just before her death. The declaration was: "My last words to her was, 'We will always stick together and pull together and work harder, all of us together.' That was her wish." The court excluded the evidence. The ground complaining of this ruling sets forth previous testimony of the witness which was substantially the same. In these circumstances, whether or not the testimony as to the declaration of Mrs. Malloy out of the presence of the propounders was admissible, the rejection of the testimony was not cause for a reversal.

7. In answer to a question propounded by her attorney, the caveatrix testified: "My mother told me before my father died, when she gave me a list of the stocks and bonds she had, she said, 'Ida, I want you to know what I have, and I want you to protect every one and have every one treated like the others.'" The evidence was offered as material and pertinent upon the issues as to undue influence, fraud, and mistake of fact, as set up in the caveat. The evidence was objected to on the ground that the witness could not testify as to conversations with the testatrix, "contrary to the terms of the will," except as "illustrating, if they do, the soundness or unsoundness of the mind of the testatrix, but only for that purpose." The objection was sustained and the judge limited the application of the evidence to the question of mental capacity.

(*a*) The testimony was not as to a transaction or communication in which the witness was incompetent to testify under the Code, § 38-1603. (*b*) In connection with other evidence on the subject, the testimony was material and pertinent to the issues of fraud and undue influence as set up in the caveat. The judge erred in restricting consideration of the evidence in such manner as to exclude its consideration on the issues of fraud and undue influence.

8. A witness was asked as to his opinion, based on his observations and conversations with the testatrix, if she could better understand when talking solely in Jewish. It was stated to the judge that if permitted to ask the question the answer would be that Mrs. Jennie Borochoff "talked in Jewish and could not understand English, and that one talking to you would have to explain things to her in Jewish." The testimony was admissible in connection with other evidence tending to show inability of the testatrix to read and write, that she was in ill health and hard of hearing, and manifested the natural affection of a mother to the caveatrix; it appearing also that there was other evidence relied on to show knowledge of the testatrix as to the contents of the will, in that the will had been read to the testatrix in English in a normal and natural tone. It was erroneous to exclude the testimony thus offered.

9. A witness for the propounder, who had given testimony as to certain donations for charity by the testatrix, was asked on direct examination his opinion as to the soundness of her mind. He replied: "She was of very sound mind." On cross-examination he was asked: "In your opinion, do you believe she could have been influenced to deprive this Morris Bloomberg of some money under a will, who didn't have anything, her own brother?" It was stated to the judge that witness was expected to answer that "she could not have been influenced to deprive him." The rejection of the evidence was not cause for reversal.

10. "In the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party, or any one for whose immediate benefit such suit is prosecuted or defended, a witness, with the privilege of subjecting such witness to a thorough and sifting examination, and with the further privilege of impeachment, as if the witness had testified in his own behalf, and were being cross-examined." Code, § 38-1801. This law is applicable on the trial of a case on appeal from probate of a will in

solemn form. And on such trial a person designated as a legatee in the will, whose interest would be adversely affected if the caveat should be sustained, may be called as a witness by the caveatrix for the purpose of cross-examination and impeachment, as provided in the statute. It was erroneous to refuse to allow such examination of the witness Isadore Borochoff, a legatee under the will, as complained of in the motion for a new trial. The proposed questions sought to elicit answers tending to rebut previous testimony of the witness taken by deposition; and consequently the refusal to allow the witness to be examined was not authorized on the ground that the case had been "closed on direct evidence, and only rebuttal testimony would be heard."

11. "Eccentricity of habit or thought does not deprive a person of the power of making a will; old age and weakness of intellect resulting therefrom does not, of itself, constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question." Code, § 113-205. In *Stephens* v. *Bonner*, 174 *Ga.* 128 (4) (162 S. E. 383), applying in part § 113-208, as to the effect of undue influence in relation to execution of wills, it was held: "A very wide range of testimony is permissible on the issue of undue influence. This is due to the fact that undue influence seldom can be shown except by circumstantial evidence. It results from the circumstances and surroundings of the testator and his associations with the person or persons exercising the undue influence. For this reason it is proper, on this issue, to consider the testator's dealings and associations with the beneficiaries; his habits, motives, feelings; his strength or weakness of character; his confidential, family, social, and business relations; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw light on the issue raised by the charge of undue influence." Considering the reasons stated by the testatrix, in item 5 of the will, for discriminating against the caveatrix as therein pointed out, together with the testimony of the caveatrix tending to contradict such statements, and other evidence as to unequal distribution, and the conduct of the propounder, Mrs.

Simon, in regard to the business affairs of the testatrix, and other circumstances shown by the evidence, it was erroneous for the judge, as complained of in the motion for new trial, to withdraw from the consideration of the jury the question of fraud and undue influence.

12. The judge charged the jury: "The burden is upon the propounders of the will . . to make out a prima facie case by showing the factum of the will, that is, by showing Mrs. Jennie Borochoff did execute the will, . . and at the time of such execution . . the testatrix, . . acted freely and voluntarily and understood the provisions of the will and had testamentary capacity,—that is, that her mind was sound and her will was free. If you find this has been shown, this would be what the law requires to make out a prima facie case for the propounders, and the burden would then shift to the caveatrix . . to prove the validity of the objections filed by her to the alleged will." This instruction was supplemented by charging that "the propounders . . in making out a prima facie case . . must prove by a preponderance of testimony, among other things, that the testatrix at the time she signed this will knew the contents of the will and understood what was in the will." This charge was not erroneous as against the caveatrix for the reason assigned, that "the court fails therein, as well as in other portions of its charge, to instruct the jury that in the case of a testatrix who can neither read nor write, as was the case here, it is indispensably necessary that the propounders establish by a preponderance of the evidence that her said alleged will was read over to her, and that she understood the contents of the same and approved the same as her last will and testament." If further instructions were desired along the line suggested in the above-quoted criticism of the charge, an appropriate written request should have been made. *Savannah Electric Co. v. Jackson,* 132 *Ga.* 559 (4) (64 S. E. 680).

13. The motion for a new trial complains of the charge: "If the jury have doubt as to the testamentary capacity of the testatrix, the reasonableness or unreasonableness of the disposition sought to be made may be considered, but this is only to be done as evidence bearing on the question of capacity." The words, "but this is only to be done as evidence bearing on the question of capacity," amounted to further withdrawal from the jury of con-

sideration of the ground of caveat based on fraud and undue influence, which in division 11 above we have held to be erroneous; but as the judgment is reversed because of the error pointed out in that division, and upon other grounds, it is not necessary to hold that the above-quoted instruction was cause for reversal based on other criticisms of the charge expressed in the motion for new trial. In *Crow* v. *Whilworth,* 170 *Ga.* 242 (3-6) (152 S. E. 445), it was held that a somewhat similar charge was not cause for reversal. That decision is not controlling in the instant case. While one of the grounds of caveat in that case was based on alleged fraud and undue influence, the evidence did not, as in the instant case, tend to support the charge. As the judgment is reversed because of errors pointed out above, no ruling will be made on the assignments of error based on the general grounds of the motion for new trial. *Judgment reversed. All the Justices concur.*