21221. LEE v. BOYER, Administrator.

ARGUED MAY 8, 1961—DECIDED JUNE 8, 1961—REHEARING DENIED JUNE 22, 1961.

Roger H. Lawson, Bloch, Hall, Groover & Hawkins, for plaintiff in error.

Lovejoy Boyer, D. R. Jackson, D. C. Chalker, R. B. Rhodenheiser, Jr., Mitchell P. House, Jr., contra.

HEAD, Presiding Justice. Lovejoy Boyer, as a creditor of the estate of Elmer Treisch, deceased, sought to probate in solemn form the alleged will of the deceased. Mrs. Laura Treisch Lee, the daughter and only heir at law of the testator, by her caveat, as amended, denied the validity of the will, the grounds of caveat being mistake of fact as to the conduct of the caveatrix, monomania in connection with the caveatrix, and undue influence exercised by Bess Renouf, the person named as executrix in the will. The caveatrix appealed from the judgment of the ordinary admitting the will to probate. On the trial of the case in the superior court the jury found in favor of the propounder. The motion for new trial, as amended, of the caveatrix was denied by the trial judge, and the exception is to this judgment.

In the alleged will of the testator numerous bequests were made in various sums, the largest bequest being $10,000 to the Georgia Chiropractic Association for a student loan fund. The only bequest to the caveatrix was as follows: "I hereby give and bequeath to my daughter, Laura W. Lee, of Portland, Oregon, the sum of $5 to be paid to her in cash by my executor im-

mediately after he is qualified. My reason for giving her this sum is that I have heretofore permitted her to draw from my funds and particularly the First National Bank, Macon, Georgia, the sum of some $25,000 or $30,000, the exact amount of which I do not recall. I consider this advancement and gift to her being a sufficient amount to receive from my estate."

1. The first sentence of the brief of evidence, duly approved by the trial judge, is as follows: "Caveator admitted a prima facie case, and that at the time of the execution of the will the testator had testamentary capacity." It has been earnestly contended by counsel for the propounder in oral argument and by written briefs that the admission that "at the time of the execution of the will the testator had testamentary capacity," required the finding by the jury that the will was valid, and that the testator was not laboring under monomania, mistake of fact, or undue influence in the execution of the will.

Counsel for the caveatrix urge that the admission should be construed only as an admission of a prima facie case. See *Bowles v. Bowles*, 211 Ga. 461 (86 SE 2d 318). It is insisted that the trial judge and counsel for both parties so construed the admission on the trial, since evidence was allowed without objection in connection with all grounds of the caveat, and the trial judge charged the jury on the contentions of the caveatrix and stated that she had admitted a prima facie case.

The record supports the contention of counsel for the caveatrix that on the trial the admission was apparently treated merely as the admission of a prima facie case. However, this court must decide cases on the duly approved record sent to us. "Presumptions of law are sometimes conclusive, and an averment to the contrary shall not be allowed. These are termed estoppels, and are not generally favored. Among these are . . . solemn admission made in judicio, . . ." *Code* § 38-114; *Fisher v. George S. Jones Co.*, 108 Ga. 490 (34 SE 172). "A solemn admission in judicio is an estoppel everywhere and forever; . . ." *Anderson v. Clark*, 70 Ga. 362. The admission by the caveatrix that at the time of the execution of the will the testator had testamentary capacity would preclude any finding in her favor as to any ground of her caveat which would be included in the

term "testamentary capacity," and it therefore becomes necessary that we determine what is meant under our law by this term.

In the often-quoted case of *Slaughter v. Heath*, 127 Ga. 747 (1) (57 SE 69, 27 LRA(NS) 1), it was held: "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." This ruling was based substantially on a recommended charge in the earlier case of *Stancell v. Kenan*, 33 Ga. 56, 68.

In *Morgan v. Bell*, 189 Ga. 432, 435 (5 SE2d 897), and in *Spivey v. Spivey*, 202 Ga. 644, 651 (44 SE2d 224), the statutory rules for determining testamentary capacity are stated to be *Code* §§ 113-201, 113-202, 113-204, and 113-205. *Code* § 113-201 declares that, "Every person may make a will, unless laboring under some legal disability arising either from a want of capacity or a want of perfect liberty of action." The other sections deal with the condition of the mind of the testator. In *Code* § 113-202 it is stated: "The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property." In *Code* § 113-205 it is stated: "Eccentricity of habit or thought does not deprive a person of the power of making a will; old age and weakness of intellect resulting therefrom does not, of itself, constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone."

There can be no question but that the admission that the testator had "testamentary capacity" at the time of the execution of the will would preclude any finding that the testator was insane or an imbecile. Would the admission preclude the caveatrix from showing that he was afflicted with monomania in regard to the caveatrix?

In *Dibble v. Currier*, 142 Ga. 855, 856 (83 SE 949, 41 AC 1), it was held: "Our Code recognizes such a thing as monomania as affecting testamentary capacity. Civil Code (1910), § 3840 [now § 133-204]. But it means a mental disease, not merely the unreasonable conduct of a sane person. It is a species of insanity. . . It is not every delusion which will deprive one of testamentary capacity. It must be an insane delusion. . . The subject-matter of the insane delusion must have no foundation in fact, and must spring from a diseased condition of mind."

In *Yarbrough v. Yarbrough*, 202 Ga. 391, 400 (43 SE2d 329), it was held: "A part of *Code* § 113-202 is applicable on the question of monomania, to wit: 'The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property.' A decided and rational desire does not exist where the testator is partially insane, and the will is in any way the effect or result of that insanity. *Gardner v. Lamback*, 47 Ga. 133, 134 (5)."

We conclude that the admission of "testamentary capacity" of the testator by the caveatrix eliminated any consideration of the ground of caveat that the testator was afflicted with monomania from which the will resulted.

While undue influence "whereby the will of another is substituted for the wishes of the testator" (*Code* § 113-208) will invalidate a will, a testator can not be said to lack testamentary capacity because he executes a will under undue influence. The distinction in the matters invalidating a will is shown by the following language from *Franklin v. First Nat. Bank of Atlanta*, 187 Ga. 268, 271 (200 SE 679): "While it is true that the law provides that absence of testamentary capacity will invalidate a will, and the law also provides that where the will of one wielding undue influence or practicing fraud or other act upon the testator is substituted for the will of the testator himself, the testament will likewise be invalidated, yet neither of these rules is directed to the abridgment of the right of the citizen to make a will. The testamentary-capacity rule does not abridge this right, but simply recognizes the inability of one who comes

within the operation of the rule to exercise the right which he unquestionably has. The undue-influence rule not only does not challenge the right, but contemplates added protection of that right, and works destruction to any disposition by will and testament of property by any person other than the person entitled to make disposition thereof."

A will executed "under a mistake of fact as to the existence or conduct of an heir at law of the testator" (*Code* § 113-210) is inoperative only in so far as such heir is concerned, and where a testator has several heirs and the mistake of fact exists only as to a part of his heirs, the entire will is not necessarily void. *Adams v. Cooper,* 148 Ga. 339 (2) (96 SE 858). It was held in *Pennington v. Perry,* 156 Ga. 103 (8) (118 SE 710), that where a testatrix executed a will under a mistake of fact as to the existence of an heir, the will would not be inoperative as to such heir if the testatrix later learned of the existence of the heir at a time when she had testamentary capacity and if she had sufficient time before her death to allow her reasonable time and opportunity to execute another will. These principles are inconsistent with the theory that a mistake of fact as to the existence or conduct of an heir renders a testator lacking in testamentary capacity.

The admission in the present case that the testator had testamentary capacity at the time of the execution of the will eliminated any issue made by the caveat that the testator was laboring under any mental disability to execute the will, including monomania from which the will resulted; but did not eliminate the issue of undue influence and mistake of fact.

2. In *Ransone v. Arnold,* 183 Ga. 184 (187 SE 857), it was held: "A memorandum in a will, of advancement to a legatee, is conclusive of the fact, and is not subject to change by parol evidence." This ruling was based on *Code* § 113-1014. It has been urged by counsel for the propounder that under the ruling made in the *Ransone* case it is a conclusive presumption that the recital in the testator's will is true that he had permitted his daughter to draw from his funds the sum of $25,000 or $30,000.

In the *Ransone* case the will had already been admitted to probate, and it is therein stated: "Probate was a determination

of the legal execution of the will, testamentary capacity, and issues of undue influence, fraud, or mistake in execution of the will." The question before the court was the construction of the will, and not whether it should be admitted to probate. The *Ransone* case has no application to a case like the present one where it is contended by a ground of the caveat that the testator was laboring under a mistake of fact as to advancements to the caveatrix.

3. Grounds 4 through 9 of the motion for new trial, as amended, assert that the trial judge erred in excluding testimony by the caveatrix as to transactions and communications between the caveatrix and the testator. This evidence was offered for the purpose of showing that the testator was laboring under a mistake of fact as to the conduct of his daughter in his belief that she had withdrawn large amounts of money from his account. It is insisted that these transactions and communications with the deceased testator were not inadmissible under *Code* § 38-1603 (1), and that the evidence was pertinent to the issue of mistake of fact.

*Code* § 38-1603 (1) provides: "Where any suit shall be instituted or defended by a person insane at the time of trial, or by an indorsee, assignee, or transferee, or the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person as to transactions or communications with such insane or deceased person whether such transactions or communications were had by such insane or deceased person with the party testifying or with any other person." In *Brown v. Carroll*, 36 Ga. 568, 570, it was held: "In a caveat to a will, what is the cause of action in issue and on trial, and who are the parties to it? The cause of action is the factum of the will, and the parties are the propounders and the caveators. The parties to this proceeding are all in life. In no sense of the word can the testatrix be called the 'other party,' in opposition to either the propounder or the caveators; and it is only where one party to the original contract or cause of action is dead, that the other party is excluded. Here all the parties are in life, and both sides can be heard in behalf of their own interests. The

facts of this case do not make this propounder one of those 'hereinafter excepted.' "

It is asserted by counsel for the propounder that the case of *Brown v. Carroll,* supra, was decided under the act of 1866, and prior to the act of 1889, and that it is not applicable under present *Code* § 38-1603 (1). The case of *Brown v. Carroll,* supra, was construing the act of 1866 (Ga. L. 1866, p. 138; Code of 1868, § 3798 (1)), as follows: "Where one of the original parties to the contract or cause of action in issue or on trial, is dead, or is shown to the court to be insane, or where an executor or administrator is a party in any suit on a contract of his testator or intestate, the other party shall not be admitted to testify in his own favor." While this language is substantially different from the present Code section, the "other party" in that act and the "opposite party" in the present Code section have the same meaning. The case of *Brown v. Carroll,* supra, was cited with approval in *O'Brien v. Spalding,* 102 Ga. 490, 495 (31 SE 100, 66 ASR 202); and *Yarbrough v. Yarbrough,* supra; in both of which cases the question at issue was whether or not an attorney was competent to testify as to transactions and communications with his deceased client, the factum of the will of the client being in issue in the case. See also *DeLoach v. Myers,* 215 Ga. 255, 258 (109 SE2d 777).

In *Peretzman v. Simon,* 185 Ga. 681, 684 (196 SE 471), testimony by a caveatrix as to a conversation with her moher, the testatrix, was held to be relevant on certain issues, and not to be inadmissible under *Code* § 38-1603.

Under the foregoing cases, we consider the law to be settled that the evidence excluded was not inadmissible on the basis of the caveatrix being the "opposite party" in a suit instituted by the personal representative of a deceased person under *Code* § 38-1603 (1). However, a part of the evidence excluded consisted of declarations of the testator, and we have the further question as to whether these declarations were incompetent as hearsay testimony.

Where a will is sought to be invalidated on the ground of fraud or undue influence, the declarations of the testator tending to show the state of the testator's mind are admissible on

these issues, but are not admissible for the purpose of showing the truth of the facts stated by him. *Dennis v. Weekes,* 51 Ga. 24 (6); *Mallery v. Young,* 94 Ga. 804 (22 S. E. 142); *Jones v. Grogan,* 98 Ga. 552 (7) (25 SE 590); *Young v. Mallory,* 110 Ga. 10, 12 (35 SE 278); *Underwood v. Thurman,* 111 Ga. 325, 329 (2) (36 SE 788); *Credille v. Credille,* 123 Ga. 673 (3) (51 SE 628, 108 ASR 157); *Purser v. McNair,* 153 Ga. 405 (112 SE 648); *Pennington v. Perry,* 156 Ga. 103 (4) (118 SE 710); *Ezell v. Mobley,* 160 Ga. 872 (9, 11) (129 SE 532); *Reid v. Wilson,* 208 Ga. 235, 237 (3) (65 SE2d 913).

We have found no case directly in point with the present case on the question of the admissibility of declarations of a testator on the issue of mistake of fact as to the conduct of an heir. In *Slaughter v. Heath,* 127 Ga. 748 (11), supra, it was held: "Where a testator bequeathed to a daughter only five dollars, and in the will assigned as a reason therefor that her husband had not treated him justly, evidence to show the transaction between them or the conduct of the son-in-law in respect thereto, in so far as it was known to him, was admissible as tending to show what operated on his mind. If the son-in-law withheld money from him (whether rightfully or wrongfully), and this was known to him, it would be admissible, as throwing light on the reason assigned in the will." The testimony which was excluded in that case was offered by the propounder, but the same reasoning would apply in the present case, and evidence of declarations of the testator would be admissible to show what operated on his mind, in consideration of the issue of mistake of fact as to the conduct of the caveatrix.

4. In ground 10 of the amended motion for new trial it is contended that it was error to exclude a handwritten memorandum with wording which indicated that it had reference to an item in the will in which the testator bequeathed $10,000 to the Georgia Chiropractic Association for a student loan fund. This memorandum was submitted to a witness for the propounder, Mrs. Bess Renouf, and she denied that she had written it. It is contended that this memorandum should have gone to the jury for the purpose of comparison with letters written by Mrs. Renouf so that they might determine that it was written by her and thus

impeach her testimony, and to show that at the time of the execution of the will the testator was unduly influenced by Mrs. Renouf.

The allegations of the caveat in regard to undue influence by Mrs. Renouf did not relate in any way to the bequest to the Georgia Chiropractic Association, and there was no evidence in the case to indicate that Mrs. Renouf had any interest in this bequest, or exercised any influence over the testator concerning it. Even if this witness had admitted that she had written the memorandum, it would not have been germane to any issue in the case. Since it was entirely irrelevant and immaterial, the trial judge did not err in refusing to allow it to go to the jury so that, if the jury should find that the memorandum was in the handwriting of the witness, it would impeach her testimony that she had not written it. Compare *Poland v. Osborne Lumber Co.,* 37 Ga. App. 212 (2) (139 SE 734).

5. In ground 11 an excerpt from the charge of the court is assigned as error, the first sentence being almost identical with the language of *Code* § 113-210 in regard to mistake of fact as to the existence or conduct of an heir at law of the testator. The latter part of this excerpt deals with monomania, and with mistake of fact in conjunction with monomania. This latter portion was requested by counsel for the caveatrix. It is asserted that the first sentence and the latter portion are both correct as abstract principles of law, but that the two were so coupled together that the jury was instructed in effect that mistake of fact and monomania both had to exist before the jury would be authorized to find against the will. There is no merit in this contention.

6. In ground 12 it is asserted that the court erred in failing to charge that a mistake of fact on the part of the testator as to the existence or conduct of an heir at law, standing alone, would be sufficient to avoid a will as to that heir at law. It was not error, in the absence of a timely written request, to fail to charge this principle.

7. The question presented by grounds 13, 14 and 15 is whether or not the provisions of *Code* § 113-106 are applicable to the present case, where the testator made only a nominal be-

quest to his daughter. This Code section provides in part: "A testator, by his will may . . . bequeath his entire estate to strangers, to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and upon the slightest evidence of aberration of intellect, or collusion or fraud, or any undue influence or unfair dealing, probate should be refused."

In *Deans v. Deans,* 166 Ga. 555, 559 (144 SE 116), where this court held that it was error to fail to charge the provisions of the above Code section, it was stated that "the disposition of the estate was entirely to the exclusion of the child." On the second appearance of that case in this court (*Deans v. Deans,* 171 Ga. 664, 681, 156 SE 691, 74 ALR 222), it was held: "In the case at bar, and under the provisions of section 3832 [now § 113-106], if one who has been *altogether* excluded in a will establishes the fact that he is a son of the testator," the trial judge must give the provisions of § 113-106 in charge. In *Smith v. Davis,* 203 Ga. 175, 179 (45 SE2d 609), this latter case was cited, and it was stated in connection therewith: "On a second appearance of that case in this court . . . it was held that the provisions of the section should be applied only in a case where a party covered by the statute was altogether excluded in the will." In *Bowman v. Bowman,* 205 Ga. 796, 811 (55 SE2d 298), it was held: "It must also be borne in mind that this case, in which the testator's wife was altogether excluded by the terms of the will, and the testator's property was devised to a stranger [citing *Deans v. Deans,* 166 Ga. 555, supra], comes within the terms of *Code* § 113-106."

The exact question made by the present case was decided in *Beman v. Stembridge,* 211 Ga. 274 (85 SE2d 434), where a testator had left only one dollar to his wife. It was there held: "The wife having been bequeathed one dollar, it cannot be held that she was altogether excluded in the will of the testator," and that the provisions of § 113-106 are applicable only when the wife is altogether excluded in the will of her husband. While the *Beman* case was not a full-bench decision, the ruling there made as to the application of *Code* § 113-106 is in harmony with the earlier cases herein cited.

We therefore hold that the provisions of § 113-106 have no

application to the facts of the present case, and the trial judge properly refused the requests to charge made by the caveatrix as shown in grounds 13, 14, and 15.

8. The general grounds of the motion for new trial are without merit.

*Judgment reversed. All the Justices concur.*